## Rudy v. H. H. Butler Stores, Inc.

*Oscar G. Wickersham, Sumner S. Bowman* and *Lynn M. Irvine,* for plaintiff.
*Samuel Levin* and *Beidleman & Hull,* for defendant.

WICKERSHAM, J., Feb. 7, 1929.—This is an action brought by Mary Rudy to recover damages because of a malicious prosecution brought against her by a man by the name of Sloane. After counsel for plaintiff closed her case, counsel for defendant moved for a compulsory non-suit, claiming it was shown that the information in the case was made by one not an executive officer of the defendant company; that there was no testimony in the case which shows any authority on the part of the manager to bring a prosecution; that the evidence itself does not raise any such presumption; that there is no testi-

mony of any knowledge on the part of the executive officers of this company that they knew the manager had proceeded in this case criminally, nor that he had any authority so to do, and that not being shown, a verdict against this company could not stand. Whereupon a compulsory non-suit was granted. In stating the case to the jury, we carefully reviewed all the facts which appeared from the testimony of the plaintiff; they need not be repeated in this discussion.

In the motion to take off the compulsory non-suit, three reasons have been assigned which may be grouped together as they raise one question of law, to wit, the right of the plaintiff to establish an implied agency arising from a course of conduct as between the defendant and its agent from which the jury might have found that the defendant ratified the alleged unauthorized act on the part of its agent in the bringing of the prosecution against Mary Rudy, or at least showing silent acquiescence in the bringing of numerous prosecutions covering a long period of time, and the effect of the defendant's receiving the fruits of such prosecutions.

The law governing a case such as this is well settled. In the absence of proof of express authority, an implication thereof can arise in the case of a subordinate agent only when an arrest is made for the protection of the principal's property in danger, for its recovery or to prevent a crime at the time being committed: Rossman v. American Express Co., 70 Pa. Superior Ct. 525. Undoubtedly, a principal may be held liable for the act of his agent in instituting a malicious prosecution, but the act of the agent becomes that of the principal only when expressly authorized or when his authority to act may fairly be inferred from the nature and scope of the employment. Generally, the duty of superintendence does not carry with it the duty to arrest or prosecute. The inference of authority to do either does not arise from the mere fact of the agency. The authority may be implied when the arrest is made by the agent in the absence of the principal for the protection of property that is in danger, and in some cases it has been inferred when the arrest was to recover the property back or where the crime was at the time being perpetrated. But where the act is done for the punishment of the supposed criminal or for the vindication of the law, it is not the act of the principal and does not subject him to liability. This principle has been uniformly recognized in the decisions on the subject, and whatever lack of harmony there is in the cases has resulted in the difficulty of applying it to the particular facts. On the other hand, the trend of decision is against holding the principal liable when the arrest has been made after the supposed crime had been committed, and not for the protection of his property or interests. In such cases, the agent has been presumed to have acted on his own account for the vindication of justice: Per Fell, J., in Markley v. Snow, 207 Pa. 447, 451, et seq.

The burden is on one alleging agency to prove the fact and its extent: Dobbs v. Zink, 290 Pa. 243. And the fact cannot be proven by the declarations of the alleged agent nor by his acts done without the knowledge or authority of the principal: Central Penna. Telep. and Supply Co. v. Thompson, 112 Pa. 118.

Applying the above stated well established principles of law to the contention of counsel for the plaintiff that we erred when we sustained objections to certain testimony which was offered to prove or establish the liability of the defendant corporation for the act of its manager of the Harrisburg branch of its stores, the evidence discloses that the defendant is a corporation with its principal office in the City of New York; that Sloane was the manager of its branch store at Harrisburg. It also appears from the evidence that some one,

on June 29, 1926, purchased a dress from the Harrisburg store of the defendant on what is known as a sale contract, who made a small payment on account and received the dress and signed a contract to pay for it in a certain way by certain instalments. The name signed to the contract was Ruth Ream. That on Aug. 23rd, in the same year, Sloane, the manager of the store, made an information against the plaintiff, alleging she was the party who bought the dress, and charging her with larceny by trick, artifice or device. She was arrested, imprisoned, tried afterwards in the Court of Quarter Sessions and acquitted.

Counsel for the plaintiff, in order to establish authority on the part of Sloane, the manager of the Harrisburg branch of the defendant corporation, to bring criminal prosecutions in order to collect the bills of the corporation, offered to prove his record of a number of criminal prosecutions brought before Alderman Gladfelter of the City of Harrisburg against the customers of the Butler Stores, Inc.; that in a number of these cases defendants prosecuted settled the cases; to be followed by other proof that the defendant in this suit, upon settlement of these prosecutions, received from J. W. Sloane, the manager and agent, the proceeds or benefits from such prosecutions—this for the purpose of showing a course of conduct between Sloane and the defendant in this suit from which the jury might infer that Sloane was acting within the scope of his employment. This offer was objected to because it did not show any evidence from which it could be inferred that the defendant company had any knowledge of any of the proceedings. The employment as manager does not presume to imply the ability to bind the company by swearing to an information in a criminal prosecution from the fact that it may have occurred more than once. Unless it is accompanied with knowledge of the company, it would not be competent. We sustained the objection.

Counsel for the plaintiff further offered to prove that Sloane told Mrs. Wallace, the mother of plaintiff, that he had full authority from his employer to bring criminal prosecutions; this to be followed by testimony showing that the same manager subsequently brought a large number of criminal prosecutions against other customers of the Butler Stores, and that the Butler Stores, Inc., had notice of these other prosecutions and that they received the benefits from these prosecutions. We asked counsel for the plaintiff how he expected to show the fact that the company had notice, to which he replied:

Mr. Wickersham: "We expect to show that statements were made as a result of these criminal prosecutions and we propose to call this man Sloane and have him testify that he returned that money from time to time to the company." Mr. Hull: "That would not show the fact."

Mr. Wickersham: "Showing at least silent acquiescence on the part of the principal in alleged unauthorized acts on the part of the agent."

We suggested counsel for the defendant had better call Sloane first, which he did. Counsel for the plaintiff then stated what he expected to prove by this witness, which was objected to by counsel for the defendant. After some discussion, we sustained the objection to the offer of proof on the part of counsel for the plaintiff. Furthermore, counsel for the plaintiff made an offer to prove a course of conduct on the part of Sloane, the manager. Objection being made to this evidence, we sustained the objection, quoting from Markley v. Snow, *supra*.

We have given our rulings in this case most careful consideration. We have also examined the authorities cited by counsel for plaintiff in support of his contentions. We fail to discover that we erred in the rejection of evidence offered by the plaintiff. We think the plaintiff has failed to sustain the bur-

den of proof placed upon her to show the implied authority of the manager, J. W. Sloane, to bring the criminal prosecutions. Counsel for the plaintiff, in his offer, purporting to link the acts of the manager with knowledge of the corporation, explicitly stated that he could not show by any evidence that J. W. Sloane, the manager, or any other employee of defendant corporation, had brought to the notice of the corporation and its executive officers at its home office in New York City any knowledge of any such criminal prosecutions, but based his offer to prove the knowledge of the defendant corporation solely upon the number of prosecutions and the alleged fact that the defendant corporation knowingly received benefits therefrom. There was no proof that the manager or any other employee of the corporation notified the home executive office at New York of the bringing of any prosecutions by the Harrisburg manager. It cannot be said that the corporation should have known of said prosecutions by reason of public repute, since the reports and accounts of their manager contained no intimation thereof, and the location, 200 miles away from the scene of the activities of the manager, could not possibly bring any intimation by public report or otherwise of said actions.

We think, further, that the defendant corporation could not be said to have knowingly received any benefits from the manager's acts by reason of the fact that he had brought previous criminal prosecutions and had thereby collected debts and settled accounts and received money therefrom. It was incumbent upon the plaintiff to show to the satisfaction of the trial judge by means of his offer what evidence he intended to introduce later to independently prove the agency in question in order that the court may determine whether or not such proof would be satisfactory and would justify the admission of the acts and declarations of the agent. The plaintiff failed to do this. To allow incompetent evidence to be introduced without being sustained by the party introducing it, with proof, would unalterably prejudice and influence the minds of the jurors and seriously and permanently damage the defendant's case. Such introduction of evidence would raise collateral issues and confuse the minds of the jurors: Heron v. Phipps, 246 Pa. 294.

For the reasons we have given, the plaintiff's motion to take off the nonsuit must be denied. From Homer L. Kreider, Harrisburg, Pa.