Neel, Insurance Commissioner, *v.* Crittenden,
Appellant.

Argued September 28, 1945. Before MAXEY, C. J.,
DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Oliver Evans,* with him *Henry O. Evans* and *Reed, Smith, Shaw & McClay,* for appellant.

*Paul J. Donnelly,* with him *Josef Jaffe, Robert W. Semenow* and *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE JONES, November 26, 1945:

In this case the defendant, an alleged subscriber to the Keystone Indemnity Exchange, resisted the Insurance Commissioner's suit for the recovery of an assessment imposed upon subscribers to the Exchange by order of the Court of Common Pleas of Dauphin County. He bases his defense on the allegation that he never signed or filed a power of attorney authorizing an attorney-in-fact to bind him to an exchange of contracts of indemnity among subscribers to the Exchange. The plaintiff entered a rule for judgment for want of a sufficient affidavit of defense which the court below made absolute and the defendant took this appeal.

Sec. 1004 of the Insurance Code of May 17, 1921, P. L. 682, Art. X, as amended by the Act of April 9, 1929, P. L. 464, Sec. 1 (40 P.S. § 964), requires, inter alia, that a subscriber to a reciprocal or inter-insurance exchange "shall, through [his] attorney, file with the Insurance Commissioner . . . A copy of the form of power of attorney, or other authority of such attorney, under which such insurance is to be effected or exchanged, and which shall provide that the liability of the subscribers, exchanging contracts of indemnity, shall make provision for contingent liability, equal to not less than one additional annual premium or deposit charged." It is the "contingent liability" of a subscriber to the Exchange, as required by the above-quoted statutory provision, that the defendant seeks to avoid.

The substantial question involved is whether the defendant by his conduct over a long period of years, as averred in the plaintiff's statement of claim and not sufficiently denied by the defendant's affidavit (*Buehler v. United States Fashion Plate Co.*, 269 Pa. 428, 433, 112 A. 632), did not confirm the Keystone Indemnity Company (the common attorney of the Exchange and its subscribers) as his attorney-in-fact for the exchange of contracts of indemnity and estop himself from asserting to the contrary, thereby rendering immaterial his allegation that he had not signed a power of attorney.

At various times between 1929 and 1933 the Keystone Indemnity Exchange issued to the defendant fourteen separate policies of insurance which the defendant received and accepted and paid the premiums thereon. These policies were in either of one of two forms. In the one form, "The subscribers to Keystone Indemnity Exchange, severally, but not jointly . . . and represented by Keystone Indemnity Company, Attorney-in-Fact, . . ." agreed to insure the defendant "in accordance with the terms and conditions of this Indemnity Contract" in consideration of the defendant's (1) payment of the specified premium, (2) his statements contained in the application for the contract and (3) his "execution of a power of attorney to Keystone Indemnity Company, authorizing it to execute reciprocal or inter-insurance contracts between the holder of this Indemnity Contract and other subscribers to Keystone Indemnity Exchange." The other policy form provided that "In consideration of the payment of the premium as herein provided, the declarations of the Assured herein contained, and the execution of a power of attorney to the Keystone Indemnity Company, Attorney-in-Fact (hereinafter called the Company), authorizing it to execute reciprocal or inter-insurance policies between the Assured and other Subscribers to Keystone Indemnity Exchange, said Subscribers represented by Keystone Indemnity Company, Attorney-in-Fact, AGREE

TO INSURE the named Assured against the risks assumed . . ." under the policy. It is unnecessary to detail further provisions of the policies held by the defendant. Suffice it to say that they make a number of additional references to the "Attorney-in-Fact", as such or as the "Company", and place upon it important duties requiring it to act in the assured's behalf or in his stead in respect of exchanged reciprocal policies.

We think the defendant's voluntary conduct fully qualified him as a subscriber to the Exchange. By Sec. 1001 of the Insurance Code of 1921, cit. supra, under which the Exchange operated, "Individuals, partnerships, and corporations, . . . designated subscribers, are . . . authorized to exchange reciprocal or inter-insurance contracts with each other . . . providing indemnity among themselves from any loss which may be insured against under any provision of the insurance laws excepting life insurance." It was by virtue of that authority alone that the Exchange, acting by a named attorney-in-fact, issued to the defendant the policies which he received and accepted and for which he paid the stipulated premiums. By those policies, the other subscribers to the Exchange, acting by the same attorney-in-fact, obligated themselves to indemnify the defendant against loss from certain specified hazards. Yet, the defendant would have himself excluded from the group of insuring subscribers notwithstanding that in reciprocal insurance a subscriber is at once an insured and an insurer: see *Long v. Sakleson*, 328 Pa. 261, 264, 195 A. 416, where the nature of reciprocal insurance is considered. In short, the defendant would enjoy the benefits of the policies issued to him by the Exchange but be relieved from their burdens on the ground that he had not formally authorized the attorney-in-fact to act for him.

One's acceptance of the benefits of the acts of an ostensible agent confirms the authority of the agent and estops the principal from denying liability for attend-

ant obligations: cf. *Bell v. Scranton Trust Co.*, 282 Pa. 562, 569, 128 A. 494; also *Schroeder v. Blauner's Inc.*, 349 Pa. 426, 430, 37 A. 2d 496. That the defendant in the instant case was fully cognizant of the actions of the attorney-in-fact clearly appears. The policies themselves plainly import that the attorney-in-fact was authorized to act for the defendant in common with all other subscribers in respect of a reciprocal exchange of contracts of indemnity. The defendant is presumed to know the contents and purport of his policies: *Butler Candy Co. v. Springfield Fire and Marine Ins. Co.*, 296 Pa. 552, 557, 146 A. 135. His knowledge of the material facts was direct and does not rest upon imputation: cf. *Seiss v. McClintic-Marshall Corporation*, 324 Pa. 201, 204, 188 A. 109.

The pertinency of the rule as to implied confirmation of an agent's authority and the estoppel of the principal to deny it is all the more indicated in a case, such as this, where the intended undertaking can be carried out efficiently only by a common attorney-in-fact acting for all subscribers and the Exchange. Such a representative serves as a "clearing house" for the desired exchange of contracts which the individual subscribers, acting alone, could not possibly effect. The statute contemplates the use of such an agent or attorney-in-fact: Secs. 1003 and 1004 (d). And, the law in general recognizes the necessity for the interposition of such an instrumentality: see *Long v. Sakleson*, supra, at p. 263, where this Court defined reciprocal or inter-insurance by quoting from Brennen, Inter-Insurance—Its Legal Aspects and Business Possibilities, 58 Cent. L. J. 323, as follows: "A system of insurance whereby several individuals, partnerships and corporations underwrite each other's risks against loss by fire or other hazard, *through an attorney-in-fact, common to all,* under an agreement that each underwriter acts separately and severally and not jointly with any other." (Emphasis supplied).

Moreover, the relationship which the defendant entered into (at least impliedly) with the attorney-in-fact named in his policies was a status which the law obliged him to assume. Sec. 1004 (d) of the Act of 1921, cit. supra, expressly required, as a condition of the defendant's acceptance of the policies issued by the Exchange, that he file with the Insurance Commissioner a copy of the power of attorney under which the insurance was effected or exchanged and containing a provision for the insured's contingent liability to the extent specified by the Act. By failing to comply formally with the law's requirement in such regard, the defendant did not thereby escape the liability which the law imposed upon him as the recipient of contracts by reciprocal exchange. In *Commonwealth ex rel. v. Keystone Indemnity Exchange,* 335 Pa. 333, 336, 6 A. 2d 821, on a question as to "issued policies which not only did not contain the contingent liability provision required by the statute, but even provided no assessment should be made," this Court, speaking through Mr. Justice LINN, said that "It is no answer to the State's request that appellant pay its share of the contingent liability, that its agent, the Indemnity Company, made a contract that it should not be paid." Interpreting that decision in *Commonwealth ex rel. Schnader v. Keystone Indemnity Exchange,* 338 Pa. 405, 407, 11 A. 2d 887, Mr. Justice LINN added that "This conclusion was required by the legislation regulating reciprocal and inter-insurance exchanges; the parties could not, by their own agreement, set aside the statute." By the same token, neither may an actually participating policy-holder effect such a result by failing to do what the statute directs shall be done.

In *Taggart v. Wachter, Hoskins & Russell, Inc.,* 179 Md. 608, 21 A. 2d 141, the very question here raised was present in connection with the assessment of another subscriber to the same Exchange but was passed over because, as the Court of Appeals of Maryland noted, "the possible lack of a separate written power [was]

taken by both parties to be immaterial in the case." We think the lack of a separate written power of attorney is also immaterial here in view of the requirements of the law, the contents of the policies and the defendant's undenied conduct with respect to them.

The appellant cites a number of cases where the legally required steps to be taken by a subscriber to a reciprocal insurance exchange, including the filing of a power of attorney, are related. However, those cases were not concerned with nor did they pass upon the question of the contingent liability of a *subscriber* (i. e., a participating policy-holder) who has failed or neglected to sign and file a written power of attorney.

The judgment of the court below is affirmed.